*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps Court of Criminal Appeals

Before
CRISFIELD, HITESMAN, and GASTON
Appellate Military Judges

———————————————

**UNITED STATES**
Appellee

**v.**

**Kareem I. DIGGS**
Seaman (E-3), U.S. Navy
Appellant

**No. 201800087**

Decided: 26 September 2019

Appeal from the United States Navy-Marine Corps Trial Judiciary. Military Judge: Commander Hayes C. Larsen, JAGC, USN. Sentence adjudged 18 November 2017 by a general court-martial convened at Naval Station Norfolk, Virginia consisting of officer and enlisted members. Sentence approved by the convening authority: forfeiture of all pay for three months, reduction to pay grade E-1, confinement for six months, and a bad-conduct discharge.

For Appellant: Lieutenant Clifton E. Morgan III, JAGC, USN.

For Appellee: Lieutenant Timothy C. Ceder, JAGC, USN; Major Kelli O'Neil, USMC.

———————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 30.2.**

———————————————

PER CURIAM:

Appellant was convicted, contrary to his pleas, of one specification of indecent visual recording in violation of Article 120c, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920c (2012 ed.). He was acquitted of two specifications of sexual assault under Article 120, UCMJ.

The appellant raises two assignments of error (AOE): (1) the military judge abused his discretion when he denied the trial defense counsel's (TDC) challenge for implied bias, and (2) the evidence is factually insufficient to sustain the conviction.

We find no prejudicial error and affirm the findings and the sentence.

## I. BACKGROUND

The appellant and Logistics Specialist 3d Class (LS3) MR were best friends celebrating LS3 MR's 21st birthday in her apartment with her boyfriend, Hull Maintenance Technician 2d Class (HT2) Askew. HT2 Askew worked the night shift and left for work around 1800. The appellant and LS3 MR then watched a movie. They were both drinking hard alcohol throughout the night and became intoxicated. Later in the evening, the appellant asked a friend, LS3 Ortiz, to bring him some food. LS3 Ortiz arrived at what she thought was LS3 MR's apartment sometime after 2100 and stayed outside in the hall until about 2315, during which time, the appellant and LS3 Ortiz exchanged several phone calls and text messages.

HT2 Askew left work early and returned to LS3 MR's apartment around midnight. When he arrived, he found LS3 MR naked from the waist up, hanging off her bed, and very intoxicated. HT2 Askew shook her and called her name as she regained consciousness. He helped her stand up and carried her to the common living room because she was having trouble walking on her own. HT2 Askew then went back to LS3 MR's bedroom to look for clothes. He looked in the closet and found the appellant sitting on the floor of the closet, apparently asleep, shirtless, and wearing different pants than he had been wearing earlier in the evening.

HT2 Askew ended up putting some of his clothes on LS3 MR because it was easier than trying to dress her in her own clothes. He returned to the bedroom to look for signs of what happened. He found the appellant's phone and discovered that it contained naked pictures of LS3 MR in which she appeared to be asleep, as well as "selfie" pictures of the appellant. HT2 Askew then used his phone to take a picture of the appellant's phone displaying the thumbnail pictures of LS3 MR. After returning LS3 MR to her bed, HT2 Askew decided to leave and stay with a friend. The next morning, he sent LS3 MR the picture he had taken of the appellant's phone.

Additional facts necessary to resolve the AOE's raised are addressed below.

## II. DISCUSSION

### A. Challenge for Cause

The appellant asserts the military judge erred in denying a defense challenge for cause against one of the court members, LT JY.

RULE FOR COURTS-MARTIAL (RCM) 912(f)(1)(N), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.), states a "member shall be excused for cause whenever it appears that the member . . . [s]hould not sit . . . in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." This rule applies to both actual bias and implied bias. *United States v. Rome*, 47 M.J. 467, 469 (C.A.A.F. 1998)."The burden of establishing that grounds for a challenge exist is upon the party making the challenge." RCM 912(f)(3).

Actual bias is a personal bias that will not yield to the military judge's instructions and the evidence presented at trial. *United States v. Nash*, 71 M.J. 83, 88 (C.A.A.F. 2012) (citation omitted). We review the military judge's ruling on a challenge for cause based on actual bias for an abuse of discretion and we afford the military judge a high degree of deference on such rulings. *United States v. Woods*, 74 M.J. 238, 243 (C.A.A.F. 2015). Actual bias is a subjective test viewed through the eyes of the military judge. *United States v. Warden*, 51 M.J. 78, 81 (C.A.A.F. 1999). The military judge's ability to watch the challenged member's demeanor during the voir dire process makes him specially situated to make factual determinations when assessing actual bias. *United States v. Terry*, 64 M.J. 295, 302 (C.A.A.F. 2007).

The implied bias test is one of public perception and appearance of fairness. *Woods*, 74 M.J. at 243. The question before us is "whether the risk that the public will perceive that the accused received something less than a court of fair, impartial members is too high." *United States v. Bagstad*, 68 M.J. 460, 462 (C.A.A.F. 2010) (quoting *United States v. Townsend*, 65 M.J. 460, 463 (C.A.A.F. 2008)). We review the totality of the circumstances and assume the public is familiar with the unique structure of the military justice system. Our standard of review on a challenge for cause premised on implied bias is "less deferential than abuse of discretion, but more deferential than de novo review." *United States v. Rogers*, 75 M.J. 270, 273 (C.A.A.F. 2016) (citation omitted). "[W]here the military judge places on the record his analysis and application of the law to the facts, deference is surely warranted." *Id.* However, less deference is given when the military judge's implied bias analysis is

not comprehensive or not articulated in the record at all. *See United States v. Clay*, 64 M.J. 274, 277 (C.A.A.F. 2007).

For defense challenges, "[t]he military judge is also mandated to err on the side of granting a challenge. This is what is meant by the liberal grant mandate." *United States v. Peters*, 74 M.J. 31, 34 (C.A.A.F. 2015) (citation omitted).

LT JY, was the staff duty officer for the Commander, Naval Surface Force Atlantic (SURFLANT), the appellant's ship's parent command, when the initial and subsequent reports of sexual assault and video recording were transmitted through the naval messaging system. In that capacity, LT JY received and reported those messages to the SURFLANT Chief of Staff. LT JY remembered very little about the content of the messages and recalled only generic details such as the on or about dates, the ship the appellant was assigned to, paygrades of those involved, and that photography was an issue. When initially asked by the trial counsel if, despite his knowledge of some of these facts, he could still be impartial, LT JY replied: "Yes, I assume I can."[1]

During group voir dire, LT JY indicated an affirmative response to the defense counsel's question regarding whether cheating on one's boyfriend or girlfriend is immoral, and whether people who have made immoral choices are more likely to commit crimes. During individual voir dire, LT JY stated that "immorality is a greased load. The more immoral you are, the more tempted you are about other crimes."[2] When asked by the trial counsel if he could separate those behaviors he considered to be immoral from his determination of whether the appellant committed the offenses as charged, LT JY replied: "I believe I could."[3] When asked by the assistant defense counsel if there was anything about the case with "cheating involved"[4] that would cause him difficulty in hearing the facts, looking at the credibility, and determining the appellant's guilt based only on the facts before him, LT JY replied: "No, sir."[5]

Also during individual voir dire, LT JY stated that "[c]onsent can't be implied; it has to be given."[6] The trial counsel followed up on this response ex-

---

[1] R. at 210.

[2] R. at 209.

[3] *Id.*

[4] R. at 212.

[5] *Id.*

[6] R. at 214.

plaining that the military judge would instruct him on what consent means and that consent can be implied. When asked if he would be able to follow that instruction, LT JY replied: "yes."

The TDC challenged LT JY at trial on grounds of both actual and implied bias, arguing that LT JY had prior involvement with the investigation, could not separate his views on immoral conduct from a determination of criminal guilt, and could not be fair and impartial. The military judge denied the challenge for cause stating:

> I have considered the challenge for cause on the basis for both actual and implied bias, as well as the mandate to liberally grant defense challenges. The challenge against [LT JY] is denied because in the Court's perspective, [LT JY] was very forthright and open in the Court's questioning. He indicated that he would follow the Court's instructions during the robust discussion between both trial counsel and defense counsel. I believe that [LT JY] exhibited . . . his impartiality and he would be open to hear from both sides on issues and he would be willing, also, to [keep] an open mind on these issues discussed by the parties.[7]

On appeal, the appellant asserts the military judge erred in not granting the challenge on grounds of implied bias, and we confine our analysis to those grounds. Because the military judge made no specific findings regarding LT JY's implied bias, we review the record for ourselves to determine whether a member of the public would perceive LT JY's court-martial participation as unfair. *Clay*, 64 M.J. at 277. We note that a challenged member's elaboration and responses to additional voir dire questions can cure circumstances which could otherwise support a finding of implied bias. *See United States v. Schlamer*, 52 M.J. 80, 87, 93 (C.A.A.F. 1999).

We find that implied bias was not a close question on the record before us, given that LT JY had no prior meaningful involvement with the case, that he agreed to follow the military judge's instructions, and that he assured the court that he would decide the case based only on the information presented at trial.

With respect to his prior involvement, LT JY described the facts he was aware of as "generic," noting that he only remembered the general dates, the ship and paygrades of those involved, and that photography was an issue.

---

[7] R. at 298.

When asked if he could "be impartial at this court-martial" despite his knowledge of the case, LT JY answered, "Yes – I assume I can." Although this response was also somewhat equivocal, we note that LT JY's prior knowledge and involvement with the case was minimal and extended only to receiving generic message traffic regarding the report of sexual assault and passing that information on to the SURFLANT Chief of Staff as one of his duties as the staff duty officer. The extent of his involvement was explored by both parties as well as the military judge. Finally, LT JY answered directly and unequivocally that he could follow the military judge's instructions on consent, incapacitation, the full range of punishment, the government's burden to prove their case beyond a reasonable doubt, and that he could decide the case only on the information presented before him.

We further find the record does not support the appellant's claim that LT JY could not disconnect his own sense of morality from the determination of the appellant's criminality. When asked if he could separate the appellant's immoral behavior from determining any criminal behavior, LT JY equivocally replied, "I believe I could." However, when the assistant defense counsel asked if there was anything that would prevent LT JY from deciding the case based only on the facts before him, despite the fact that there was cheating involved. LT JY answered unequivocally, "No, sir." We find that this further elaboration, elicited by the defense, cured any potential issue raised by LT JY's earlier responses.

Based on the record before us, we are confident that a member of the public would not reasonably have substantial doubt about the legality, fairness, or impartiality of the appellant's court-martial due to LT JY's participation as a panel member. Taking into account the mandate that defense challenges be liberally granted, we find no error in the military judge's denial of the TDC's challenge for cause against LT JY.

## B. Factual Sufficiency

The appellant contends that the evidence is factually insufficient to support his conviction. We review questions of factual sufficiency de novo. Article 66(c), UCMJ; *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). In evaluating factual sufficiency, we determine whether, after weighing the evidence in the record of trial and making allowances for not having observed the witnesses, we are convinced of the appellant's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). In conducting this unique appellate function, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399. However, proof beyond a reasonable doubt does

not mean the evidence must be free from conflict. *United States v. Norwood*, __ M.J. __ , No. 201800038, 2019 CCA LEXIS 318, *25 (N-M. Ct. Crim. App. 9 Aug. 2019) (citing *United States v. Rankin,* 63 M.J. 552, 557 (N-M. Ct. Crim. App. 2006)).

The appellant was convicted of indecent visual recording. To support this conviction, the government was required to prove beyond a reasonable doubt that: (1) the appellant knowingly photographed the private area of LS3 MR; (2) the photographing was done without LS3 MR's consent; (3) the photographing was done under circumstances in which LS3 MR had a reasonable expectation of privacy; and (4) the appellant's conduct was wrongful. Article 120c(a)(2), UCMJ.

The appellant argues that there is reasonable doubt that he knowingly took the nude pictures of LS3 MR, based on two possible theories: either (1) the appellant was too intoxicated to form the required mens rea to intentionally take the photographs, or (2) while the appellant was passed out, someone else accessed his phone and took nude photographs of LS3 MR. Based on the record, we are not persuaded that either theory, nor any other, creates reasonable doubt as to the appellant's guilt.

The photographs themselves are strong evidence that the appellant knew what he was doing and that LS3 MR did not consent to being photographed and was not even aware she was being photographed. The images are well framed and focused starting from some distance away and moving progressively closer to LS3 MR, until they are eventually so close that they become blurry and out of focus. During his interview with the Naval Criminal Investigative Service (NCIS), the appellant stated he remembered the details of what was going on less than an hour prior to HT2 Askew returning to LS3 MR's room and described several events in detail, to include that he stopped LS3 MR's sexual advances and texted LS3 Ortiz to "hurry up."[8] LS3 Ortiz testified that she spoke on the phone and exchanged several texts with the appellant before she left the apartment complex at 2315. She testified that the appellant did not sound intoxicated during their conversations.[9] The appellant went on to describe in detail to NCIS that after he texted LS3 Ortiz, LS3 MR became more sexually aggressive, that they eventually had sex, and

---

[8] Prosecution Exhibit (PE) 8 at 23.

[9] R. at 563.

that the last thing he heard LS3 MR say was that her "boyfriend doesn't love her."[10]

The picture of the appellant's phone with the thumbnail photographs displayed was entered into evidence as Prosecution Exhibit (PE) 2. This is the only evidence that the appellant's phone was used to take indecent pictures of LS3 MR. HT2 Askew, LS3 Ortiz, and LS3 MR all testified that the phone shown in PE 2 belonged to the appellant. The appellant obtained a new phone within a few days of learning that LS3 MR was aware of the photographs, and the record is devoid of any evidence of what happened to the appellant's phone displayed in PE 2. HT2 Askew testified and explained what he saw when he returned to LS3 MR's room, including finding the appellant in the closet and finding the photographs on the appellant's phone.

While the record establishes that the appellant was intoxicated to some degree, the military judge properly instructed the members that "the fact that the accused may have been intoxicated, at the time of the offense, does not necessarily indicate that he was unable to have the required knowledge; because a person may be drunk yet still be aware at the time of his actions and their probable results."[11] The appellant was able to take nine well-framed and well-focused pictures of LS3 MR's exposed vagina and breasts. Additionally, the appellant's statements to NCIS indicate that he remembers the details of what occurred leading up to, during, and after he had sex with LS3 MR. Finally, the appellant and LS3 Ortiz continued to communicate after HT2 Askew sent LS3 MR the pictures. LS3 Ortiz testified that the she and the appellant talked about what happened at LS3 MR's apartment and that the appellant "just knew that he had hurt her [LS3 MR] in some way because of the pictures."[12] Taking the evidence together as a whole, we are convinced that the appellant was not so intoxicated that he could not form the requisite specific intent to knowingly photograph LS3 MR.

With respect to the issue of identity, HT2 Askew was the only person to enter the room while both the appellant and LS3 MR were asleep or passed out. He was the only witness to see the pictures on the appellant's phone. He testified how he found LS3 MR half-naked and hanging off her bed, carried her to another room and dressed her, and then returned her to her bed. HT2 Askew testified that after finding the appellant in the closet, he noticed a

---

[10] PE 8 at 34.

[11] R. at 791.

[12] R. at 595.

phone and attempted to access it but could not because it was locked. He then noticed another phone and successfully accessed it; found selfies of the appellant and the nude pictures of LS3 MR; and used his phone to take a picture of the thumbnail images; and later sent that picture to LS3 MR. HT2 Askew was subject to cross-examination and impeachment for not telling NCIS that he had to shake LS3 MR to get a response and for his counterintuitive act of leaving LS3 MR in her room with the appellant. The TDC argued that HT2 Askew took the pictures as "revenge porn" to shame LS3 MR for cheating on him.[13]

"When weighing the credibility of a witness, this court, like a fact finder at trial, examines whether discrepancies in witness testimony resulted from an innocent mistake, such as a lapse of memory or a deliberate lie." *United States v. Berger*, No. 2015000254, 2016 CCA LEXIS 322, at \*36 (N-M. Ct. Crim. App. 26 May 2016) (citation omitted), *rev'd on other grounds*, 76 M.J. 128 (C.A.A.F. 2017). The members were best situated to judge HT2 Askew's credibility, and nothing in the record compels us to believe that he lied when he testified about what he observed and what he did when he returned to LS3 MR's room. Further, HT2 Askew's testimony was compelling and we see no reason to conclude that he took the nude pictures of LS3 MR.

LS3 MR testified that she is the subject of the nude photographs, and that she neither consented to being photographed, nor was aware that she was being photographed. While we acknowledge that the record is not clear on exactly when the nude pictures were taken, there was no indication that anyone other than LS3 MS or the appellant was present in the room until HT2 Askew returned around midnight. The appellant's assertions that he was too intoxicated to remember taking any pictures is belied by his very detailed statement to NCIS about having consensual sex with LS3 MR a mere 45 to 60 minutes before being found in the closet. Based on this evidence and the surrounding circumstances, the members could reasonably infer that the appellant was in fact the person who took the pictures of the victim that evening and that he knew what he was doing.

After weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are convinced beyond a reasonable doubt that the appellant knowingly took the nude photographs of LS3 MR during the night of her twenty-first birthday and that he is guilty of indecent visual recording in violation of Article 120c, UCMJ.

---

[13] R. at 830.

### III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the finding and the sentence, as approved, are correct in law and fact and that no error materially prejudicial to the appellant's substantial rights occurred. Articles 59 and 66, UCMJ, 10 U.S.C. §§ 859, 866. Accordingly, the finding and sentence are **AFFIRMED**.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court